IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| VELMA FRAN JOHNSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 5:12-cv-460 (MTT) (CHW) |
| | : | |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| *Acting Commissioner of Social Security*, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Velma Fran Johnson's application for benefits. 42 U.S.C. § 405(g). Because the ALJ failed to consider records from River Edge Behavioral Health Center, a "limited and meaningful review" of Plaintiff's case is not possible. Therefore, **IT IS RECOMMENDED** that Plaintiff's case be **REVERSED AND REMANDED** to the Commissioner for further action in accordance with the analysis below.

## ADMINISTRATIVE HISTORY

Plaintiff Johnson applied for Title XVI benefits on October 28, 2008.[1] (R. 14). At the time of her administrative hearing on January 26, 2011, Plaintiff was 48 years old. She claimed to suffer from back and leg pain, depression, anxiety, bipolar disorder, and significant anger issues. (R. 39-40). Plaintiff previously worked for "Best Western," supervising an 8-person housekeeping crew, (R. 47); for "Save A Trip," managing 10 people and "ordering, unloading trucks, scheduling, [and] box change at banks," (R. 47-48); and for "Community Access Incorporated," as a "rehabilitation tech." (R. 48-49). Plaintiff claims that she left her last job at

---

[1] Plaintiff previously applied for Title II and Title XVI benefits on November 28, 2006. (R. 14).

Best Western in September 2005 based on a mutual agreement because Plaintiff "started blowing up . . . at people." (R. 47).

Plaintiff's 2008 claim was denied initially and on reconsideration, and Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ") on April 7, 2010. (R. 14). On April 6, 2011, the reviewing ALJ found that Plaintiff had not been "disabled" since at least October 28, 2008, the date she filed her Title XVI application. (R. 26). The Appeals Council affirmed this finding, denying Plaintiff's request for review on October 24, 2012. (R. 1).

## STANDARD OF REVIEW

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to

determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Id.*

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. *Id.*

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of a least twelve months. 42 U.S.C. § 423(d)(1)(A).

When analyzing the issue of disability, the Commissioner must follow a five-step sequential evaluation procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether or not the claimant is currently engaged in substantial gainful activity. Second, upon a finding that the claimant is not working, the Commissioner determines whether the claimant has any impairment that prevents the performance of basic work activities. Next, if the existence of such impairments has been found, the Commissioner determines whether the impairment(s) meets or medically equals the severity of one or more of the specified

impairments listed in Appendix 1 of Part 404 of the regulations. If the claimant's impairments do not meet or medically equal a listed impairment, the Commissioner must evaluate the claimant's residual functional capacity (RFC) for work. Fourth, using the claimant's RFC, the Commissioner determines whether the claimant is able to perform the physical and mental demands of his past work despite the impairments. Finally, and only when it has been determined that the claimant is unable to perform his or her past work, the Commissioner must determine whether there are sufficient numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and past work experience.

## ANALYSIS

Plaintiff argues that the ALJ failed to properly evaluate the psychological evidence of record. (Doc. 14, p. 3). She claims that the ALJ erred (1) by failing to account for limitations proposed by Dr. Muller, a consulting psychologist; (2) by failing to consider evidence from River Edge Behavioral Health Center; and (3) by improperly discounting the opinion of Jennifer Holmes, a nurse practitioner. (Doc. 14, p. 7).

Although the ALJ properly accounted for Dr. Muller's limitations, a "limited and meaningful" review of the ALJ's decision is not possible because the ALJ failed to evaluate, on the record, the evidence from River Edge. Accordingly, Plaintiff's case must be remanded to the Commissioner for further action. On remand, the Commissioner should both evaluate the River Edge evidence and also re-evaluate the 2010 opinion of Jennifer Holmes, which the ALJ improperly discounted.

## THE ALJ'S FINDINGS

Following the five-step sequential evaluation procedure, the reviewing ALJ issued an unfavorable decision on April 6, 2011. (R. 14-26).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least October 28, 2008, the date Plaintiff filed her Title XVI application. (R. 16). At step two, the ALJ found that Plaintiff had the following severe impairments: "osteoarthritis of the lumbar spine, obesity, depression, and anxiety." (R. 16). However, the ALJ concluded that Plaintiff's "right lung tumor," "cyst on her back," "irritable bowel syndrome," "gastroesophageal reflux disease," "history of kidney stones," "high cholesterol," and "leg pain," were "non-severe impairments," and that Plaintiff's alleged cervical cancer was a "non-medically determinable impairment." (R. 16-17). At step three, the ALJ determined that Plaintiff's impairments, severe and non-severe, did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16). Therefore, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC") and found that Plaintiff could perform:

> light work . . . with the following exceptions: Due to osteoarthritis of the lumbar spine and obesity, the claimant can balance, stoop, kneel, crouch, crawl, or climb ramps or stairs occasionally. Due to obesity, the claimant should avoid all work involving concentrated exposure to workplace hazards such as unprotective heights. Due to mental impairments, the claimant is limited to simple, routine, repetitive tasks and only occasional interaction with the public. (R. 18).

Based on this RFC finding, the ALJ found, at step four, that Plaintiff could not perform her past relevant work as a "Head housekeeper," "Manager of stores," "Waitress" or "Rehabilitation technician." (R. 24). At step five, however, the ALJ determined that Plaintiff could adjust to "other work" existing in significant numbers in the national economy. (R. 25-26). Therefore, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since October 28, 2008. (R. 26).

### (1) DR. MULLER'S LIMITATIONS

Plaintiff first argues that the ALJ failed to account for limitations proposed by Dr. Muller, a consulting psychologist whose findings the ALJ afforded "significant evidentiary weight."

(Doc. 14, p. 5-6). The record does not support Plaintiff's argument. Dr. Muller diagnosed Plaintiff with "Dysthymia"[2] and, in addition, made the following relevant findings

> [Plaintiff] could cooperate and get along with anyone who she felt was understanding and accommodating of her physical limitations. Her ability for sustained, focused attention is interfered with by her chronic pain condition and to a lesser degree, by her mild anxiety and depression. She could understand and carryout a simple instruction without difficulty. (R. 346-47).

Plaintiff argues, without citing instructive authority, that Dr. Muller's psychological findings are not consistent with the ALJ's RFC findings. This argument is not tenable. The ALJ properly limited Plaintiff to "simple, routine, repetitive tasks." (R. 18). *See, e.g., Jarret v. Commissioner of Social Security*, 422 Fed. Appx. 869, 872 (11th Cir. 2011) (holding that hypotheticals[3] restricting claimants to "simple and routine tasks" adequately account for restrictions related to "concentration, persistence and pace," provided that the medical evidence demonstrates an ability to perform those tasks). The ALJ also properly limited Plaintiff to "only occasional interaction with the public." *See, e.g., Washington v. Social Security Administration., Commissioner*, 503 Fed. Appx. 881, 883 (11th Cir. 2013) (holding that the ALJ accounted for a claimant's "moderate limitations in social functioning" by asking a hypothetical limiting jobs to those involving only "occasional interaction with the general public"). Accordingly, on these facts, there is no basis to conclude that the ALJ failed to adequately tailor Plaintiff's RFC to account for Dr. Muller's proposed limitations.

### (2) EVIDENCE FROM RIVER EDGE

Plaintiff next argues that the ALJ failed to consider evidence from River Edge Behavior Health Center. (Doc. 14, pp. 6-7). The record supports Plaintiff's argument.

---

[2] Dr. Muller also diagnosed Plaintiff with "Cocaine Dependence (In Long Term Sustained Remission)." (R. 346).
[3] Vocational Expert responses to hypotheticals constitute "substantial evidence" supporting a disability decision, provided that the hypotheticals "comprise[] all of a claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

The River Edge evidence, collectively labeled "Exhibit 17F" (R. 462-557), consists of over 90 pages of medical records, including:

- An "Adult Intake Assessment" form dated 9/18/09 (R. 462-72);
- "Progress Note[s]" from numerous "Community Support" sessions, dating from 10/9/09 through 1/26/11 (R. 473-99);
- An "Informed Consent for Medication" form dated 2/12/10 (R. 500-01);
- A "LOCUS" form dated 8/10/09 (R. 502-07);
- Licensed Practical "Nursing Service" notes dating from 8/13/10 through 1/27/11 (R. 510-523);
- A "Progress Note for Behavioral Health Assessment" form dated 2/12/10 (R. 524);
- "Psychiatric Evaluation" session notes dating from 10/9/09 through 1/27/11 (R. 525-45);
- A "Diagnostic Formulation" form dated 8/10/09 (R. 546); and
- "Treatment Plan" notes dating from 8/10/09 through 8/13/10 (R. 547-57).

The ALJ's opinion makes no mention of these records, except to say that Plaintiff's attorney requested and was granted additional time to obtain evidence from River Edge. (R. 19).

The River Edge records themselves include a range of dissimilar findings, the significance of which the parties dispute. Plaintiff cites a November 2010 report stating that Plaintiff suffered from "Depression 10/10, Anxiety 10/10 . . . Some V[isual]/H[allucinations]," and that Plaintiff had "no appetite" and was "not sleeping." (R. 512). Plaintiff also cites a January 2011 report, signed by "Foster B. Brin (Medical Doctor/Psychiatrist)," that diagnosed Plaintiff with "Bipolar 1 Disorder . . . Depressed, Severe with Psychotic Features." (R. 544). The Commissioner, on the other hand, notes that Plaintiff's "Overall Mental Status" was repeatedly

labeled "Unremarkable" (R. 474, 477, 480, 486, 489, 492, 498). The Commissioner also claims that the River Edge evidence shows that Plaintiff made "inconsistent statements . . . regarding her symptoms," and that Plaintiff "responded well to her medications, which further undermines [Plaintiff's] allegations." (Doc. 15, p. 10).

Reviewing courts may not simply "rubber stamp" administrative decisions. *Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984). Nor, though, may they "decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Instead, the courts are tasked with conducting a review that is "both limited and meaningful." *Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir. 1985).

Because the ALJ here failed to "state with sufficient clarity the legal rules being applied and the weight accorded" to the River Edge evidence, a limited and meaningful review of Plaintiff's case is not possible. *Id*; *see also Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011) (remanding for explicit consideration and an explanation of the weight accorded to medical opinion evidence). Accordingly, Plaintiff's case must be remanded to the Commissioner for an evaluation of the River Edge evidence on the record.

### (3) Jennifer Holmes' 2010 Opinion

Plaintiff last argues that the ALJ erred by improperly discounting the February 2010 opinion of Jennifer Holmes, a nurse practitioner. (Doc. 14, pp. 6-7). The record supports Plaintiff's argument. The ALJ purportedly discounted Holmes' opinion for two reasons, both of which appear improper. Therefore, on remand, the Commissioner should also re-evaluate Holmes' opinion in light of the analysis set forth below.

(a) "Acceptable Medical Source"

The ALJ first discounted Holmes' opinion because Holmes was "not an acceptable medical source." (R. 24). While true, this fact alone does not provide a legitimate basis for wholly discounting Holmes' opinion.

20 C.F.R. § 416.913(a) states that "Acceptable medical sources" include (1) licensed physicians; (2) licensed or certified psychologists; (3) licensed optometrists; (4) licensed podiatrists; and (5) qualified speech-language pathologists. Only these "acceptable medical sources" may issue "medical opinions," which ALJs must "always consider," and which carry controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.927(a). Nevertheless, SSR 06-03p—cited by Plaintiff but not by the Commissioner—provides: "[o]pinions from [other] medical sources, who are not technically deemed 'acceptable medical sources' under [the] rules, are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939 at *3.

Holmes' "opinion," actually a standard-form, checkbox Mental Impairment Questionnaire ("MIQ"), did not purport to "establish the existence of [any] medically determinable impairment." *Id.* at *2. Rather, it merely graded Plaintiff in a number of categories based on three possible choices: "Normal," "Abnormal" and "Markedly Abnormal." Specifically, Holmes' opinion indicates that Plaintiff had an "Abnormal" ability to engage the public, an "Abnormal" mood, and "Abnormal" insight, judgment and impulse control. (R. 433, 435). The ALJ was not free to disregard these findings, without comment, simply because Jennifer Holmes is not a medical doctor. *See Corbitt v. Astrue*, 2008 WL 1776574 at *1 (M.D. Fla. April 17, 2008) (holding that ALJs are "not free to disregard the opinions of health care

9

professionals simply because they are not medical doctors"). Indeed, the findings of nurse practitioners may, in some circumstances, be given greater weight than even the findings of treating physicians or other "acceptable medical sources." See *Butler v. Astrue*, 2012 WL 1094448 at *4 (S.D. Ala. Mar. 30, 2010). Accordingly, insofar as the ALJ discounted Holmes' 2010 opinion simply because she was not an "acceptable medical source," the ALJ erred.

(b) Longitudinal Treatment Relationship

The ALJ also discounted Holmes' opinion because "the record contain[ed] no indication of a longitudinal treatment relationship."[4] (R. 24).

Apart from Holmes' February 2010 MIQ "opinion," the evidence from River Edge (Ex. 17F) indicates that Holmes saw Plaintiff in February 2010 (R. 530-33), September 2010 (R. 529), and January 2011 (R. 544). This treatment frequency exceeds that of Dr. Henry Clay, a "treating source"[5] who, according to the ALJ, saw Plaintiff only twice. (R. 24). Nevertheless, the ALJ assigned "some evidentiary weight" to Dr. Clay's "October 1, 2010" opinion, but only "little evidentiary weight" to Holmes' opinion. Holmes' treatment frequency also exceeded that of Dr. Muller, a consulting psychologist who examined Plaintiff only once, on February 25, 2009, but to whose psychological evaluation the ALJ assigned "significant evidentiary weight." (R. 23). This inconsistency in the assessment of treating, examining and "other" medical sources, without further explanation on the record, also constitutes an error. In addition, it further suggests that the ALJ either overlooked or ignored the evidence from River Edge. On remand, the Commissioner should re-evaluate Holmes' opinion in light of both the River Edge evidence and in light of SSR 06-03p, discussed above.

---

[4] *See* 20 C.F.R. § 416.927(c)(2)(i).
[5] *See* 20 C.F.R. § 416.902 (defining "treating source" as an "acceptable medical source who provides . . . medical treatment or [an] evaluation").

## CONCLUSION

After careful consideration of the record, **IT IS RECOMMENDED** that Plaintiff's case be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) for further administrative action. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO ORDERED**, this 5th day of November, 2013.

<div style="margin-left: 50%;">

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

</div>